# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1913

_____

Delmy Carolina Gomez-Garcia; Yoselin Hissella Sosa-Gomez

*Petitioner*s

v.

Jefferson B. Sessions, III, Attorney General of the United States[1]

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 7, 2017
Filed: June 28, 2017

_____

Before WOLLMAN, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Delmy Carolina Gomez-Garcia petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming the immigration judge's ("IJ")

_____

[1]Jefferson B. Sessions, III has been appointed to serve as Attorney General of the United States and is automatically substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c)(2).

denial of Gomez-Garcia's request for asylum.[2]  For the following reasons, we deny the petition.

## I.

Gomez-Garcia is a native and citizen of El Salvador.  She unlawfully entered the United States on April 5, 2014.  After the Department of Homeland Security issued a notice to appear, Gomez-Garcia conceded her removability and filed an application for asylum.

In a hearing before an IJ, Gomez-Garcia testified that she was the president of a community development organization in El Salvador, Asociacion de Desarrollo Comunal – Los Planes ("ADESCOLP").  The organization addressed gang problems in the area, including the drugs and violence resulting from MS-13 gang activity.  In her role, Gomez-Garcia went door to door gathering signatures for the creation of a local police department.  In response, MS-13 defaced the ADESCOLP office with graffiti and twice broke into the office.  The second break-in occurred in June 2013. Gomez-Garcia and another ADESCOLP board member, Matias Guevara, witnessed gang members taking ADESCOLP's electronics.  They filed a complaint with the police and, after a gang member was arrested, both Gomez-Garcia and Guevara began receiving threats from the suspect's family.  Gomez-Garcia and Guevara dropped the charges after threats to cut off Guevara's tongue or kill him and to make Gomez-Garcia "pay."

Gomez-Garcia testified that she continued speaking out against the gangs after the June 2013 incident.  In February 2014, Gomez-Garcia's nephew, who has ties to

---

[2]Gomez-Garcia also appealed the IJ's denial of her application for withholding of removal and protection under the Convention Against Torture.  The BIA affirmed the denial of relief, and Gomez-Garcia does not challenge the denial of those claims in her petition for review.

MS-13, told her that MS-13 was going to kidnap her daughter out of revenge.[3] In March 2014, the suspect in the June 2013 break-in destroyed Guevara's motorcycle, beat up his brother, and again threatened to cut off Guevara's tongue.

Gomez-Garcia and her daughter left El Salvador in late March 2014. Her nephew has since disappeared, and no further harm has come to Guevara. Gomez-Garcia testified that she fears MS-13 will kidnap her daughter or harm her if she returns to El Salvador. She also testified that there are MS-13 members throughout the country so she cannot relocate.

Patrick McNamara, a professor of Latin American History at the University of Minnesota, testified that there is serious gang violence throughout El Salvador. The gangs, McNamara explained, target anyone who obstructs their operations, witnesses a crime, or works with the police. This includes police, military, and civilians. McNamara further testified that MS-13 would target Gomez-Garcia if she returns to El Salvador and that gangs carry out their threats no matter how much time has passed. Finally, McNamara testified that it is uncommon to relocate within El Salvador and that relocating would call attention to the person.

The IJ found both Gomez-Garcia and McNamara credible. The IJ then found that Gomez-Garcia did not qualify for asylum because the harm she suffered in El Salvador did not rise to the level of persecution, there was not a sufficient nexus between the harm and a protected ground, and Gomez-Garcia failed to establish a well-founded fear of future persecution. As a result, the IJ found that Gomez-Garcia also had not carried her burden of establishing that she qualified for withholding of removal or relief under the Convention Against Torture. The BIA affirmed the IJ's decision.

---

[3]Gomez-Garcia's daughter, Y.S., is a derivative applicant on Gomez-Garcia's application for asylum.

Gomez-Garcia petitions for review. The BIA's decision was the final agency decision, see 8 U.S.C. § 1101(a)(47)(B)(i), and we have jurisdiction to consider the appeal under 8 U.S.C. § 1252(a)(5).

II.

"We review the BIA's decision, as it is the final agency action, but 'to the extent that the BIA adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action.'" Gutierrez-Vidal v. Holder, 709 F.3d 728, 731–32 (8th Cir. 2013) (quoting Matul-Hernandez v. Holder, 685 F.3d 707, 710–11 (8th Cir. 2012)). We review decisions on asylum "under the 'substantial evidence' standard, upholding the decision if it is 'supported by reasonable, substantial, and probative evidence' based on the record as a whole." Fofana v. Holder, 704 F.3d 554, 557 (8th Cir. 2013) (quoting Falaja v. Gonzales, 418 F.3d 889, 894 (8th Cir. 2005)).

The Attorney General may grant asylum to an alien who is a "refugee." 8 U.S.C. § 1158(b)(1)(A). The alien has the burden to prove "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A); id. § 1158(b)(1)(B)(i) (burden of proof). Race, religion, nationality, membership in a particular social group, or political opinion must "be at least one central reason for persecuting" the alien. Id. § 1158(b)(1)(B)(i).

Gomez-Garcia first contends that the BIA engaged in impermissible fact-finding. See 8 C.F.R. § 1003.1(d)(3)(iv) ("[T]he Board will not engage in factfinding in the course of deciding appeals. . . . If further factfinding is needed in a particular case, the Board may remand the proceeding . . . ."). The BIA explained that there was "no clear error in the Immigration Judge's factual finding that the respondent failed to establish that the gang's actions were even partially motivated by a desire to punish

4

her for a ground enumerated in the Act—much less that such motivation constituted or would constitute 'one central reason' for the actions of gang members." Gomez-Garcia argues this was impermissible fact-finding because the IJ did not consider or analyze the February 2014 threats when it found Gomez-Garcia's membership in ADESCOLP was not a central reason for her persecution. We disagree. The IJ found that Gomez-Garcia's "membership in ADESCOLP was not a central reason for the threats, but rather she became a target for the gangs because she reported a crime that led to a gang member . . . getting arrested." The IJ addressed the threats collectively in finding an insufficient nexus between the threats and a protected ground. The improper fact-finding Gomez-Garcia alleges is merely the BIA's restatement of the IJ's findings. See Saleheen v. Holder, 618 F.3d 957, 962 (8th Cir. 2010); Chak Yiu Lui v. Holder, 600 F.3d 980, 984 (8th Cir. 2010). Accordingly, we find no reason to conclude the BIA engaged in impermissible fact-finding.

Next, Gomez-Garcia argues the BIA's conclusion that there was an insufficient nexus between the threats and Gomez-Garcia's membership in ADESCOLP was not supported by substantial evidence. The BIA stated that Gomez-Garcia was threatened because she and Guevara reported the burglary. As the IJ explained, "the threats directed at them revolved around themes of keeping them quiet as witnesses or making them pay for making [the police] report." There is no evidence in the record that MS-13 threatened Gomez-Garcia and Guevara before they reported the burglary of the ADESCOLP office. And there is no evidence that any other ADESCOLP leader was ever threatened. Additionally, Gomez-Garcia testified that the February 2014 threat to kidnap her daughter was in retribution for reporting the burglary. As a result, the BIA's conclusion was supported by substantial evidence. See Marroquin-Ochoma v. Holder, 574 F.3d 574, 577 (8th Cir. 2009) (noting the necessity for "careful attention to the particular circumstances surrounding the alleged persecution" (quoting De Brenner v. Ashcroft, 388 F.3d 629, 638 n.2 (8th Cir. 2004))); Gomez v. Gonzales, 425 F.3d 543, 545 (8th Cir. 2005) ("To reverse the finding that the alleged

persecution was not based on a protected ground, it is necessary that the record *compel* the finding that a protected ground motivated the [persecutor's] actions.").

Substantial evidence also supports the conclusion that Gomez-Garcia failed to demonstrate a well-founded fear of future persecution. "To be 'well-founded,' a fear must be both 'subjectively genuine and objectively reasonable.'" Zhuang v. Gonzales, 471 F.3d 884, 890 (8th Cir. 2006) (quoting Perinpanathan v. INS, 310 F.3d 594, 597–98 (8th Cir. 2002)). "For an alien's fear of persecution to be objectively reasonable, the fear must have basis in reality and must be neither irrational nor so speculative or general as to lack credibility." Perinpanathan, 310 F.3d at 598.

The IJ and BIA concluded that Gomez-Garcia's fear of future persecution was not objectively reasonable. Gomez-Garcia remained unharmed in El Salvador for nearly a year after receiving the June 2013 threats. See Alyas v. Gonzales, 419 F.3d 756, 761 (8th Cir. 2005). Moreover, Guevara has remained in El Salvador continuously without being harmed. See Krasnopivtsev v. Ashcroft, 382 F.3d 832, 839 (8th Cir. 2004) ("The reasonableness of a fear of persecution is diminished when [similarly-situated individuals] remain in the native country unharmed . . . ."). And Gomez-Garcia's family has also remained in El Salvador unharmed. See Bernal-Rendon v. Gonzales, 419 F.3d 877, 881 (8th Cir. 2005) ("An alien's fear of persecution is reduced when her family remains unharmed in her native country."). Finally, as the IJ noted, several years have passed since MS-13 threatened Gomez-Garcia. See Lemus-Arita v. Sessions, 854 F.3d 476, 482 (8th Cir. 2017) ("[T]he fear that the group would seek [the applicant] out after so long a time is speculative and objectively unreasonable."). As a result, substantial evidence supports the IJ and BIA's determination that Gomez-Garcia failed to demonstrate an objectively reasonable fear of future persecution, and thus has not established eligibility for asylum.

6

## III.

For the foregoing reasons, we deny the petition.

_____